UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY E. HARRISON,

        Plaintiff,        Case No. 1:16-cv-879

v.        Honorable Robert J. Jonker

THOMAS MACKIE et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Borma and Bassette. In addition, the Court will dismiss Plaintiff's claims against Defendants Murphy, Sikon, Smith and Sharp, except for his ADA/RA claims (official capacity only) arising from the denial of access to the Talking Book Program and his

retaliation claim against Defendant Sikon. The Court also will order service of Plaintiff's Eighth Amendment medical claims against Defendants Crompton, Bookheimer, Mackie and Kenisson.

**Factual Allegations**

Plaintiff currently is incarcerated in the Macomb Correctional Facility, but the events giving rise to his complaint occurred at the Oaks Correctional Facility (ECF). In his *pro se* complaint,[1] Plaintiff sues the following ECF employees: Warden Thomas Mackie, Dr. Robert Crompton, Health Unit Manager Rick Bookheimer, Psychologist (unknown) Kenisson, Lieutenant (unknown) Borma, Librarian John Murphy, Library Assistant (unknown) Sikon, Warden's Assistant Erick Smith, Deputy Warden Rick Sharp and Grievance Coordinator Todd Bassette. Plaintiff also sues unknown parties named as "John Doe" and "Jane Doe."

Plaintiff first claims that he is being denied proper medical treatment and accommodation for his serious medical conditions. Plaintiff suffers from Hirschsprung's Disease, which he describes as a rare congenital condition that caused him to be born without an anus or lower intestines. As a result of his condition, Plaintiff is unable to eat and digest most foods, and experiences chronic severe pain and spontaneous defecation. Plaintiff alleges that he does not have a colostomy bag, which creates health issues and causes him humiliation and degradation. Plaintiff also suffers from Vilitigo, a skin abnormality that causes loss of pigmentation and extreme sensitivity to direct sunlight. Plaintiff further alleges that he suffers from paralysis in his left hand as the result of a botched surgery in 2008.

---

[1] On October 14, 2016, the Court granted Plaintiff's motion to amend the complaint and required him to file an amended complaint within 28 days. The Court further stated that if Plaintiff failed to submit an amended complaint within the time provided, the Court would review the original complaint (ECF No. 1) to determine whether it is subject to dismissal under 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c). Plaintiff did not submit an amended complaint; consequently, the Court has screened the original complaint to determine if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.

Plaintiff contends that Defendants Crompton and Bookheimer refused to refer him to a Hirschsprung's Disease specialist and ignored Plaintiff's repeated complaints about his medical condition. Defendant Bookheimer allegedly told Plaintiff that if he was not satisfied with the medical treatment he was getting, he could pay for his own treatment. On another occasion, Defendant Crompton allegedly told Plaintiff that he was a "cry baby" and ordered Plaintiff out of his office. Defendants Crompton and Bookheimer also denied special accommodations for Plaintiff's handicap aide to clean his cell, for biohazard bags to properly dispose of feces and for extra towels to clean himself. Plaintiff further claims that Defendant Crompton refused to provide a medical detail for excused absences when his medical condition caused him to miss scheduled institutional callouts. Without the medical detail, Plaintiff's absence from a scheduled call-out resulted in misconduct charges or removal from the callout list for that activity. Defendant Crompton also denied Plaintiff a medical detail for the Library of Congress Talking Books Program.

On March 7, 2016, Plaintiff informed Defendant Bookheimer that Defendant Crompton had failed to reorder his enemas and Lactoluse before going on vacation for a week. Plaintiff was in unbearable pain from severe constipation and asked Bookheimer for medical assistance. Defendant Bookheimer allegedly walked away saying, "That's your problem now isn't it." (Compl. ¶ 81, ECF No. 1, PageID.16.)

Plaintiff claims that as a result of having Vitiligo, he needs a full-brimmed medical hat and sun block to protect him from sun exposure while out in the yard. Defendant Crompton denied Plaintiff medical details for the hat and to allow Plaintiff to go to the day room instead of the yard on days with intense sunlight. As a result, Plaintiff frequently is confined to his cell while other prisoners are out in the yard.

Plaintiff spoke to Defendant Mackie about Defendant Crompton's failure to provide him with proper medical care and accommodations.[2] According to Plaintiff, Mackie instructed Plaintiff to write him a short letter because he would not respond to a long one. When Plaintiff told Mackie that the medical issues were "quite long," he allegedly responded, "I guess that's jes' the way it is. I won't be responding." (Compl. ¶92, PageID.18.) Plaintiff wrote a 2-page letter to Mackie, but never received a response. Plaintiff alleges that Defendant Mackie had first-hand knowledge that he was being denied proper medical treatment and failed to take corrective action.

Upon his transfer to ECF on November 25, 2014, Plaintiff's Library of Congress Talking Books equipment was confiscated by the property officer. According to Plaintiff, ECF did not want prisoners at the facility to participate in the program. Plaintiff alleges that Defendants Murphy, Sharp and Smith, engaged in a concerted effort to deny him access to the program. Plaintiff contends that Defendant Murphy "went out of his way to retaliate against Plaintiff, without cause, specifically because the ECF Oaks staff encouraged Defendant Murphy to interfere with Plaintiff's ability to continue to participate in the Library of Congress Talking Book Program." (Compl. ¶ 142, PageID.29). Defendant Murphy also violated Plaintiff's constitutional rights when he took on the role of health care staff by policing the standards for the Talking Book Program and caused Plaintiff to be black-balled by the Library of Congress. Plaintiff alleges that Defendants Smith and Sharp ignored proof of Plaintiff's acceptance into the program and violated Plaintiff's federal rights by encouraging Defendant Murphy and health care staff to deny him the medical detail necessary for him to possess the talking books equipment.

---

[2]Plaintiff's complaint appears to be missing a page that contains ¶¶88-91 concerning his conversation with Defendant Mackie.

Plaintiff further claims that "because he continued to fight for his right to participate in the Library of Congress Talking Books Program, and continued to file grievances regarding the matter, the ECF administration retaliated against [him] by alerting the Library of Congress that their equipment had been altered by Plaintiff who they suspected remov[ed] a rechargeable battery from one of the machines." (Compl. ¶ 59, PageID.12.) Defendant Sikon allegedly wrote a false misconduct charge against Plaintiff for destruction of state property on or about April 1, 2015. Plaintiff denied the charges and claimed that he had not had access to the machines since November 2014. During the misconduct hearing, Defendant Borma refused Plaintiff's request to see a photo of the altered or damaged talking book machine, in violation of Plaintiff's due process rights. Borma found Plaintiff guilty of the offense and punished him with 10 days' loss of privileges. Plaintiff asserts violations of his First and Fourteenth Amendment rights, as well as the Rehabilitation Act (RA) and the Americans with Disabilities Act (ADA), for denying him access to the Talking Book Program.

In late December 2015, Plaintiff was called to a meeting with Defendants Sharp, Crompton and Kenisson. During the meeting, which was conducted by Defendant Kenisson, Plaintiff was lead to believe that he finally would be provided with necessary medical care and treatment for his conditions. During a subsequent meeting with Defendant Kenisson, Plaintiff complained that his medical treatment had not improved since the December meeting. Plaintiff asked Kenisson to communicate with Defendant Crompton and act as his medical advocate. Defendant Kenisson allegedly responded that while Plaintiff had valid medical complaints, she could do nothing more than offer Plaintiff a forum to vent his frustrations. Plaintiff cancelled his appointment with Kenisson, returned to his cell and wrote a grievance against her. Plaintiff contends

that in light of the obvious deprivation of necessary medical treatment, Defendant Kenisson's refusal to assist him in obtaining treatment violated his Eighth Amendment rights. He further claims that her "deceptive actions, aided the Defendant in an evil and deceptive act with malice intent to continue to manipulate Plaintiff into curbing his grievance activity." (Compl., ¶ 159, PageID.33.)

Plaintiff filed numerous grievances related to the claims set forth in his complaint. He contends that Defendant Bassette continuously rejected his grievances or assigned them to unqualified individuals to respond. Plaintiff maintains that the ECF medical staff was not qualified to respond to his complex medical issues. He further claims that Bassette retaliated against him by not sending him adequate copies of receipts at Step I, rejecting grievances and allowing staff members to respond to grievances written against them, which also violated department policy.

For relief, Plaintiff seeks monetary damages.

## Discussion

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### I. Denial of Medical Treatment and Accommodation

Plaintiff contends that Defendants Crompton and Boockheimer denied him proper medical treatment and accommodations for his medical conditions, which include Hirschsprung's Disease and Vitiligo. He further claims that Defendants Mackie and Kenisson had first-hand knowledge of the denial of treatment and failed to take corrective action.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such

care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

At this stage of the proceedings, Plaintiff's allegations are sufficient order service of Plaintiff's Eighth Amendment medical claims against Defendants Crompton, Bookheimer, Mackie and Kenisson.

II.   **Talking Book Program**

Plaintiff alleges that Defendants Murphy, Sharp and Smith, engaged in a concerted effort to deny him access to the Talking Books Program. He contends that Defendant Murphy retaliated against him by thwarting his participation in the program. Plaintiff further claims that as a result of fighting to participate in the program and filing grievances, Defendant Sikon wrote a false misconduct against him for destruction of state property for allegedly removing a rechargeable battery from one of the talking book machines. Plaintiff asserts violations of his First and Fourteenth Amendment rights, as well as the Rehabilitation Act (RA) and the Americans with Disabilities Act (ADA), for denying him access to the Talking Book Program.

A.   Due Process

"Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Contrary to his assertions, Plaintiff does not have a federally cognizable liberty interest in participating in the Talking Book Program. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have

no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). The Talking Book Program is the type of educational or rehabilitative program for which Plaintiff has no liberty interest. Consequently, he fails to state a due process claim.

      B.  Eighth Amendment

    Plaintiff also fails to state an Eighth Amendment claim arising from Defendants' alleged interference with his access to the Talking Book Program. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth

Amendment." *Ivey*, 832 F.2d at 954. Talking Book Program simply is not the type of basic human necessity that would give rise to an Eighth Amendment claim. Consequently, his Eighth Amendment claim will be dismissed.

### C. ADA/RA

Plaintiff alleges that depriving him of access to the Talking Book Program also violates the ADA and the RA. Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C.A. § 12131(2). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a). The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S.

206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002). Plaintiff has named Defendants Murphy, Sikon, Smith and Sharp in both their official and individual capacities. The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that actually violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Mingus*, 591 F.3d at 482. If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Upon review, therefore, the Court concludes that Plaintiff's allegations are sufficient to warrant service of Plaintiff's ADA claims on Defendants Murphy, Sikon, Smith and Sharp in their official capacities. However, neither Title II of the ADA nor the RA provides for suit against a public official acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n. 7 (6th Cir. 2009) (ADA); *Skibbe v. Mich. Dep't of Corr.*, No. 1:05-cv-175, 2006 WL 625869, at *3 (W.D. Mich. Mar. 9, 2006) (holding that because individual officials are not public entities or programs, they are not liable in their personal capacities under either the ADA or RA). The Court, therefore, will dismiss Plaintiff's individual ADA and RA claims against these Defendants.

> D.  <u>Retaliation</u>

Plaintiff contends that Defendant Murphy retaliated against him by thwarting his access to the Talking Book Program. Specifically, Plaintiff alleges that, "Defendant Murphy went

out of his way to retaliate against Plaintiff, without cause, specifically because the ECF Oaks staff encouraged Defendant Murphy to interfere with Plaintiff's ability to continue to participate in the Library of Congress Talking Book Program." (Compl., ¶ 142, PageID.29). Plaintiff also alleges that because he continued to fight for his right to participate in the program and filed grievances regarding the matter, Defendant Sikon wrote a false misconduct against him for destruction of state property for allegedly removing a rechargeable battery from one of the talking book machines.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's claim against Defendant Murphy fails at the first step because he does not allege that he was engaged in protected conduct. The only conduct alleged by Plaintiff was his participation in the Talking Books Program. As previously discussed, participation in that program is not constitutionally protected conduct. Plaintiff, therefore, fails to state a retaliation claim against Defendant Murphy.

With regard to Plaintiff's retaliation claim against Defendant Sikon, the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to

retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). At this stage of proceedings, Plaintiff's allegations also are sufficient to satisfy the remaining requirements for a retaliation claim against Defendant Sikon. Consequently, the Court will order service of the claim.

    III.    **Misconduct Charge**

Plaintiff contends that his due process rights were violated when he was charged and convicted for a false misconduct for destruction of state property written by Defendant Sikon. Following an administrative hearing, during which Plaintiff allegedly was denied due process, Defendant Borma found Plaintiff guilty of the offense. Plaintiff was punished with 10 days loss of privileges.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). All Class I misconduct hearings shall be conducted by hearing officers from the Department of Licensing and Regulatory Affairs (LARA), while Class II hearings are conducted by a supervisory level staff member other than the person who issued the Misconduct Report and Class III hearinga may be

conducted by any staff member other than the person who issued the Misconduct Report. (Id. at ¶M, KK, YY.)

Because Plaintiff's misconduct hearing was conducted by Defendant Lieutenant Borma, an ECF staff member, rather than a LARA hearing officer, it appears that Plaintiff was convicted of a Class II or III minor misconduct. Moreover, Plaintiff does not allege that he was denied good time or disciplinary credits as a result of his misconduct conviction. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, No. 03-1935, 2004 WL 619428, at *2 (6th Cir. Mar. 24, 2004) (a fourteen-day loss of privileges did not deprive prisoner of a protected liberty interest because the sanctions neither extended the duration of his sentence nor imposed an atypical, significant deprivation); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000) ("Green had no due process liberty interest in the minor misconduct hearing because he did not allege any punishment that affected the duration of his confinement, or that constituted an atypical and significant hardship."); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug.12, 1999) ("Staffney suffered no loss of good time credits as a result of his minor misconduct conviction and the sanctions he received do not represent a liberty interest recognized by the constitution."). Plaintiff, therefore, fails to state a due process claim arising from his minor misconduct conviction.

Even if Plaintiff was convicted of Class I misconducts, he fails to state a due process claim. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create

a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[3] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does

---

[3] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin*, 515 U.S. at 472; *see also Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails). Plaintiff has not identified any significant deprivation arising from his misconduct convictions. Accordingly, he fails to state a viable due process claim against Defendants Sikon and Borma arising from the misconduct charge.

IV. **Grievance Process**

Plaintiff claims that Defendant Bassette, the grievance coordinator, continuously rejected his grievances or assigned them to unqualified individuals for a response. He further claims that Bassette retaliated against him by not sending him adequate copies of receipts at Step I, rejecting Plaintiff's grievances and allowing staff members to respond to grievances written against them, which also violated MDOC policy.

A. Due Process

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of*

*Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Bassette's alleged conduct did not deprive him of due process.

Moreover, Defendant's alleged violation of the grievance policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

      B.    Retaliation

Even assuming Plaintiff can satisfy the first two requirements for a retaliation claim, his allegations concerning causation are wholly conclusory. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).

"[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendant Bassette intended to retaliate against him for filing grievances. Accordingly, his speculative allegations fails to state a claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Borma and Bassette will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Murphy, Sikon, Smith and Sharp, except for his ADA/RA claims (official capacity only) arising from the denial of access to the Talking Book Program and his retaliation claim against Defendant Sikon. The Court also will order service of Plaintiff's Eighth Amendment medical claims against Defendants Crompton, Bookheimer, Mackie and Kenisson.

An Order consistent with this Opinion will be entered.

Dated:   March 7, 2017          /s/ Robert J. Jonker
                                ROBERT J. JONKER
                                CHIEF UNITED STATES DISTRICT JUDGE